**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV-20-08204-PCT-DWL |
| Appellant, | **ORDER** |
| v. | |
| Lawrence J. Warfield, et al., | |
| Appellees. | |

## INTRODUCTION

In 2015, Sandra J. Tillman ("Debtor") purchased a house valued at $475,000 in Prescott, Arizona. Bank of America ("BofA") and the Internal Revenue Service ("IRS") held secured claims on the house arising from, respectively, a mortgage and a pre-bankruptcy tax penalty lien.

In 2019, Debtor filed a petition for Chapter 7 bankruptcy and claimed a $150,000 homestead exemption in the house under Arizona law. The Trustee instituted an adversary proceeding to avoid the IRS's tax lien and preserve the lien for the benefit of the bankruptcy estate. The government and Debtor objected, arguing that the Trustee could not avoid the lien or, in the alternative, that the avoided lien could not be preserved for the benefit of the estate and, instead, should fall within Debtor's homestead exemption and be preserved for her benefit. The Trustee filed a motion for summary judgment, which the government and Debtor opposed. The bankruptcy court, after allowing supplemental briefing and holding oral argument, issued a detailed order granting summary judgment to the Trustee.

The government now seeks review of the bankruptcy court's order. For reasons explained below, that order is affirmed.

### BACKGROUND ON BANKRUPTCY CODE PROVISIONS

I.   Exemptions

"An estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions." *Owen v. Owen*, 500 U.S. 305, 308 (1991), *superseded by statute on other grounds as recognized in In re Ehlen*, 202 B.R. 742, 744-45 (Bankr. W.D. Wis. 1996). *See also* 11 U.S.C. § 541. In some circumstances, however, a debtor may exempt property, which serves to remove it from the bankruptcy estate. *In re Heintz*, 198 B.R. 581, 585 (9th Cir. BAP 1996). In other words, the debtor generally retains exempt property, and it cannot be used to satisfy the claims of unsecured creditors in the bankruptcy proceeding. *Owen*, 500 U.S. at 308 ("An exemption is an interest withdrawn from the estate (and hence from the creditors) for the benefit of the debtor."); *Heintz*, 198 B.R. at 585 ("Once property is exempted, its status as property of the estate is terminated and the property is ultimately revested in the debtor."). "The federal exemptions in the Bankruptcy Code were enacted to ensure that a debtor coming out of the bankruptcy process retains sufficient possessions to obtain a fresh start." *In re Butcher*, 189 B.R. 357, 369 (D. Md. 1995). *See also Matter of Hahn*, 5 B.R. 242, 244 (Bankr. S.D. Iowa 1980) (the "basic purposes for exemption laws" are to "provide a debtor enough money to survive," to "protect his dignity and his cultural and religious identity," to "afford a means of financial rehabilitation," to "protect the family unit from impoverishment," and to "spread the burden of the debtor's support from society to his creditors").

Although § 522 of the Bankruptcy Code enumerates the exemptions available to a debtor in bankruptcy, § 522(b)(1) authorizes state legislatures to "opt out" of the § 522 exemption scheme and provide their own exemption schemes. "If a State opts out, then its debtors are limited to the exemptions provided by state law." *Owen*, 500 U.S. at 308. Arizona, like many other states, has opted out of the § 522 exemptions and provides its

own to Arizona residents.  A.R.S. § 33-1133(B).  Among other things, Arizona provides a homestead exemption that permits a resident to exempt her "interest in real property . . . in which [she] resides," up to $150,000 "in value."  *Id.* § 33-1101(A)(1).

Section 522 also "places limitations on a debtor's ability to shield exempted property from liability for pre-petition tax debts."  *In re Wright*, 156 B.R. 549, 554 (N.D. Ill. 1992).  For example, "exempted property remains liable for certain nondischargeable pre-petition tax debts."  *Id.*  A "properly filed tax lien is unavoidable in bankruptcy; exempted property on which the IRS has properly filed a tax lien remains liable for any debt secured by that lien."  *Id.* (collecting cases).  *See also* 11 U.S.C. § 522(c)(2)(B) ("[P]roperty exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case, except . . . a debt secured by a lien that is . . . a tax lien, notice of which is properly filed.").

II.    Avoidance

Under § 724(a) of the Bankruptcy Code, a trustee may "avoid" a "lien that secures a claim of a kind specified in section 726(a)(4)," such as a lien for pre-petition tax penalties.[1]  When a trustee avoids a lien, it is essentially transformed into an unsecured claim, which maintains a lower priority in the distribution of bankruptcy estate assets.  *See, e.g.*, *In re Gill*, 574 B.R. 709, 717 (9th Cir. BAP 2017) ("[I]t is clear by operation of §§ 724(a) and 726(a)(4) that a penalty which is secured by a tax lien is automatically demoted in a chapter 7 case from the highest priority to the lowest priority, payable only after general unsecured creditors are paid in full."); 6 Collier on Bankruptcy ¶ 724.02[6] ("In enacting section 724(a), . . . Congress made a policy determination that payment of claims for penalties or punitive damages should be subordinated to payment of general unsecured claims.").

---

[1]    Section 726(a)(4) concerns, among other things, "payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture."  A lien for pre-petition tax penalties appears to fall within the bounds of § 726(a)(4).  *See, e.g.*, *In re Hutchinson*, 579 B.R. 860, 862 (Bankr. E.D. Cal. 2018) ("Section 726(a)(4) encompasses a broad spectrum of fines, penalties, and forfeitures, including tax penalties."); 6 Collier on Bankruptcy ¶ 726.02[4] (16th ed. 2012) ("[S]ection 726(a)(4) includes prepetition tax penalties if they are not compensation for actual pecuniary loss.").

III.   <u>Preservation</u>

Under § 551 of the Bankruptcy Code, "[a]ny transfer avoided under section 522 . . . or 724(a) . . . is preserved for the benefit of the estate but only with respect to property of the estate."[2]   In essence, this permits the trustee to recover the value of the avoided claim and use it to "increase the assets of the estate for distribution to creditors." *Heintz*, 198 B.R. at 585.   *See also* 11 U.S.C. § 541(a)(4) ("[The bankruptcy] estate is comprised of . . . [a]ny interest in property preserved for the benefit of . . . the estate under section . . . 551 . . . .").   Section 551 "serves as a 'follow-up' provision explaining how assets and property avoided under other Code provisions should be handled." *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 774 (D.N.J. 2013).

"Once a trustee recovers an asset for the estate through one of the transfer or lien avoidance provisions, § 551 automatically preserves the asset for the estate." *Heintz*, 198 B.R. at 584.   *See also In re Trible*, 290 B.R. 838, 844 (Bankr. D. Kan. 2003) ("As this Court reads § 551, upon avoidance of [the] lien . . . , the lien is *automatically* preserved for the benefit of the estate.").   "The rationale behind the automatic preservation rule for transfers and liens avoided by a trustee in bankruptcy is that the estate should benefit from each avoidance rather than promoting the priority of unavoidable junior secured interests who would otherwise improve their positions at the expense of the estate." *Matter of DeLancey*, 94 B.R. 311, 313 (Bankr. S.D.N.Y. 1988).   In other words, when a trustee avoids a lien, preservation allows the trustee to occupy the priority of the avoided lien and use that priority to distribute estate assets to unsecured creditors.   *In re Haberman*, 516 F.3d 1207, 1210 (10th Cir. 2008) ("[T]he trustee, on behalf of the entire bankruptcy estate, in some sense steps into the shoes of the former lienholder, with the same rights in the collateralized property that the original lienholder enjoyed.   Likewise, the trustee, on behalf of the entire estate, assumes the original lienholder's position in the line of secured creditors; in this way, Congress sought to assure that the avoidance of a lien doesn't simply

---

[2]      The term "transfer" includes the "creation of a lien." 11 U.S.C. § 101(54).   *See also In re Haberman*, 516 F.3d 1207, 1210 & n.4 (10th Cir. 2008) (classifying liens as a subset of transfers); 5 Collier ¶ 551.02[1] ("Section 551 preserves only 'transfers' and 'liens.'").

benefit junior lienholders who would otherwise gain an improved security position and might, when the estate is limited, prove the only beneficiaries of the trustee's actions."). Without preservation, junior lienholders would jump in priority, be able to obtain a greater share of the estate, and leave less available for distribution to unsecured creditors. *In re Seibold*, 351 B.R. 741, 746 (Bankr. D. Idaho 2006) ("[Section 551] operates to preserve an avoided lien for the benefit of the bankruptcy estate so as to permit the trustee to step into the position of the creditor whose lien has been avoided, thereby preventing a junior lien holder (or a debtor) from improving its position at the expenses of a debtor's unsecured creditors.").

## BACKGROUND

I.    Factual Background And Bankruptcy Proceedings

On June 30, 2015, Debtor purchased a house located at 154 W. Soaring Ave. in Prescott, Arizona (the "Property") valued at $475,000.  (Doc. 11-3 at 23.)

In February 2018, the IRS assessed penalties against Debtor for failing to timely file her 2015 tax return—despite having received a six-month extension to do so—and for not sufficiently pre-paying her tax liabilities through withholdings or deposits.  (Doc. 11-5 at 24-25.)  The initial penalties totaled over $18,000.  (*Id.* at 25.)

On December 24, 2018, the IRS recorded a notice of federal tax lien against Debtor and the Property (the "Tax Lien").  (*Id.*)

On January 30, 2019, Debtor filed a voluntary petition for Chapter 7 bankruptcy. (Doc. 11-3 at 23.)  In her petition, Debtor disclosed the IRS's claim on the Property and claimed a $150,000 exemption in the Property.  (*Id.* at 23-24.)

On February 27, 2019, Debtor filed a motion to compel abandonment of the Property.  (*Id.* at 24.)[3]  Debtor argued that "there was no equity in the Property above her homestead exemption."  (*Id.*)

---

[3]    When estate property is abandoned, the property is removed from the estate and taken by one having interest in the property, such as the debtor or a secured creditor.  The purpose of abandonment is to allow the trustee to remove property from the estate that is "burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).

On April 19, 2019, the Trustee filed an objection to Debtor's claimed exemptions. (*Id.*)  The bankruptcy court later denied this objection, allowing Debtor's homestead exemption in the Property and "clarifying that the homestead exemption is subordinate to BofA's mortgage lien and the Tax Lien." (*Id.*)

On July 3, 2019, the Trustee moved to list and sell the Property.  (*Id.*)  Debtor objected.  (*Id.*)  The bankruptcy court "held a preliminary hearing at which time [it] encouraged the parties to continue (or revitalize) settlement discussions." (*Id.*)

On December 27, 2019, BofA moved for relief from the automatic stay so it could foreclose its lien on the Property.  (*Id.*)  The Trustee objected because his motion to sell the Property was still pending, and Debtor objected because she "claimed to be current on her payments and . . . BofA's interests were adequately protected." (*Id.* at 24-25.)

On February 21, 2020, the Trustee instituted an adversary proceeding in which he sought a "declaration that the Trustee can avoid the Tax Lien under § 724(a) and that the value of the avoided Tax Lien is preserved for the benefit of the estate." (*Id.*)  The IRS answered the complaint and "disput[ed] Trustee's ability to avoid the Tax Lien for the benefit of the estate." (*Id.*)  Debtor intervened and answered the complaint, arguing that "her allowed homestead exemption remove[d] the Property from [the] bankruptcy estate and any recovery from the avoided Tax Lien belong[ed] to" her.  (*Id.*)

On March 26, 2020, the Trustee again moved for the bankruptcy court's approval to sell the Property, to which the IRS objected.  (*Id.*)  On April 7, 2020, the bankruptcy court held a hearing, during which the "parties advised the [bankruptcy court] that there was no pending buyer." (*Id.*)

On April 10, 2020, the Trustee filed a motion for summary judgment, to which the IRS and Debtor filed responses and the Trustee filed a reply.  (*Id.* at 25-26.)  The bankruptcy court later authorized the submission of a sur-reply and sur-sur-reply.  (*Id.* at 26.)

On July 9, 2020, Debtor filed a motion for the bankruptcy court to approve a sale of the Property.  (Doc. 11-10 at 1-4.)

1    On July 17, 2020, the bankruptcy court issued its order granting summary judgment

2  to the Trustee.  (Doc. 11-3.)

3    On July 22, 2020, the bankruptcy court held a hearing on the sale motion (Doc. 11-

4  12) and approved the sale the next day (Doc. 11-9 at 1-4).

5    The Property sold for $475,000, and $26,771 was set aside for the current balance

6  on the Tax Lien.  (Doc. 11-8 at 13, 15.)

7  II.    The Bankruptcy Court's Decision

8    As noted, the bankruptcy court issued an order granting summary judgment to the

9  Trustee.  (Doc. 11-3.)  The court addressed the following issues: (1) whether the Trustee

10  could "avoid the Tax Lien under § 724(a) and preserve the value of the avoided Tax Lien

11  for the benefit of the bankruptcy estate under § 551"; (2) if so, whether Debtor could "claim

12  the avoided Tax Lien as exempt pursuant to § 522(g)"; and (3) whether the IRS could

13  "satisfy its unsecured (but possibly nondischargeable) claim from the exemption proceeds

14  from the sale of the Debtor's homestead."  (*Id.* at 26.)[4]

15    A.    **Avoidance And Preservation Of The Tax Lien**

16    The bankruptcy court began by noting that the IRS "holds a secured claim of the

17  kind specified in § 726(a)(4)," *i.e.*, payment for a pre-petition penalty.  (*Id.* at 28.)  Debtor

18  and the IRS argued that, because Debtor claimed an exemption in the Property, the Property

19  was "removed from the bankruptcy estate" and the Trustee thus could not preserve the

20  avoided Tax Lien under § 551, as § 551 permits a trustee to preserve an avoided lien "only

21  with respect to property of the estate."  (*Id.*)  The bankruptcy court disagreed, concluding

22  that a "debtor cannot exempt [an] asset in its entirety from the estate" because a debtor's

23  exemption—including a homestead exemption—only removes the debtor's interest in the

24  asset up to the permitted value.  (*Id.* at 28-29.)

25    The bankruptcy court then discussed *In re Heintz*, 198 B.R. 581 (9th Cir. BAP

26  1996), in which the BAP held that a judgment lien avoided by the trustee was preserved

27

28  [4]    The bankruptcy court did not address the third issue in its order, stating that the issue
was not ripe because there were "no sale proceeds yet available for seizure by the IRS."
(Doc. 11-3 at 38.)

for the benefit of the estate, notwithstanding that the debtor had exempted the property that was the subject of the lien. (*Id.* at 29.) Although *Heintz* did not end the bankruptcy court's analysis,[5] the court concluded that *Heintz* "tell[s] us that property cannot be exempted from a bankruptcy estate unless it is first property of the estate." (*Id.*) Accordingly, because "the Property was property of this estate at the commencement of Debtor's bankruptcy case . . . § 551 applie[d] to the Trustee's efforts to avoid the IRS's Tax Lien." (*Id.* at 30.)

The bankruptcy court also noted that there was "another reason why the Property [was] property of [the] bankruptcy estate for § 551 purposes, even after the Court allowed the Debtor's exemption on the Property." (*Id.*) The court interpreted Arizona's homestead exemption, A.R.S. § 33-1101(A), to exempt "only the Debtor's *interest* in the Property and then only to the extent of the *value* of that interest, up to $150,000." (*Id.*) But the value of Debtor's exemption "at all times[] was no greater than the value of the Property, less the voluntary BofA lien granted by the Debtor against the Property and less the involuntary lien held by the IRS." (*Id.*) In other words, Debtor's exemptible interest in the Property did "not include the value of the Property which [was] encumbered by BofA's lien" and, because tax liens are effective against even exempt property, Debtor's exemptible interest in the Property also did not include the value of the Property which was encumbered by the Tax Lien. (*Id.* at 31-32.) Debtor's exemption was therefore "third in line, behind BofA's 1st lien and the 2nd position occupied by the IRS's Tax Lien." (*Id.* at 32.) Given this backdrop, the bankruptcy court concluded that the Trustee could avoid the Tax Lien under § 724(a). (*Id.* at 32-33.)

B.   **Debtor's Exemption**

The next question before the bankruptcy court was "whether the avoided IRS Tax Lien is preserved for the benefit of the estate or the Debtor and what rights [were] held by the IRS after its Tax Lien was avoided." (*Id.* at 33.) The bankruptcy court noted that, under § 522(g), a debtor may exempt property recovered by the trustee under § 551 "so

---

[5]      Among other things, the bankruptcy court noted that *Heintz* "did not address the interplay between § 551" and portions of § 522. (*Id.* at 29 n.46.)

long as the debtor did not conceal the property" and the lien was "not voluntarily created by the debtor." (*Id.*)  The bankruptcy court acknowledged that both conditions seemed to be satisfied here, as Debtor neither voluntarily granted the Tax Lien nor concealed the Property. (*Id.* at 34.)

Nevertheless, the bankruptcy court reasoned that § 522(c)(2)(B) "limits a debtor's right to invoke § 522(g) when a lien is avoided, and the property preserved by the trustee is a tax lien." (*Id.* at 35.)  In reaching this conclusion, the bankruptcy court relied on *In re DeMarah*, 62 F.3d 1248 (9th Cir. 1995), in which the Ninth Circuit held that a debtor could not avoid a tax lien and preserve the avoided lien for his own benefit under § 522(h).  The bankruptcy court acknowledged that this case involves a different statutory subdivision, § 522(g), but reasoned that *DeMarah*'s assessment of § 522(h) was instructive because both provisions contain the same limiting language (*i.e.,* "to the extent that the debtor could have exempted such property"). (*Id.*)

The bankruptcy court also acknowledged another "difference between *DeMarah* and [this] case"—namely, that this case involves an attempt by "the Trustee, not the Debtor," "to avoid the Tax Lien and preserve the avoided lien for the benefit of the estate's creditors and not for the benefit of the Debtor." (*Id.* at 36.)  The bankruptcy court concluded, however, that when read together, *DeMarah* and the language of § 552(c)(2)(B) compel the conclusion that a debtor cannot "co-opt a tax lien otherwise avoidable under § 724(a)." (*Id.*)  The court noted that to "hold otherwise would enable a Debtor to wrongfully fail to pay her tax bill and then use § 522(g) to claim the avoided tax penalty lien for herself and to the detriment of her creditors." (*Id.* at 36-37.)

Last, the bankruptcy court rejected the IRS's and Debtor's argument that the Trustee's proposed approach would require Debtor to "in effect[] pay twice on the IRS claim because the IRS [would] be able to then seize homestead sale proceeds to the extent those proceeds would otherwise be exempt." (*Id.* at 37-38.)  The court noted that the "Tax Lien position against the Property never attached to the Debtor's homestead exemption," so if it "so happens that the IRS's now unsecured claim is also nondischargeable, it is no

1  different than any other nondischargeable claim which will need to be paid by the Debtor."

2  (*Id.* at 38.)

3  **STANDARD OF REVIEW**

4  In the bankruptcy context, "[a] reviewing court will affirm a grant of summary

5  judgment only if it appears from the record, after viewing all evidence and factual

6  inferences in the light most favorable to the nonmoving party, that there are no genuine

7  issues of material fact and that the moving party is entitled to prevail as a matter of law.  A

8  bankruptcy court's grant of summary judgment is reviewed de novo."  *In re Pioneer Tech.,*

9  *Inc.*, 107 B.R. 698, 700 (9th Cir. 1988) (citations omitted).[6]

10  **ANALYSIS**

11  I.  Whether The Trustee Can Avoid The Tax Lien

12  A.  **Whether Debtor's Exemption Was Initially Property Of The Estate**

13  As noted, the bankruptcy court concluded that the Trustee could invoke § 551—the

14  provision of the Bankruptcy Code authorizing the preservation of an avoided tax lien for

15  the benefit of a bankruptcy estate—because "the Property [was] property of this bankruptcy

16  estate for § 551 purposes, even after the Court allowed the Debtor's exemption on the

17  Property."  (Doc. 11-3 at 30.)  In Part A of its opening brief, the government challenges

18  the bankruptcy court's conclusion on this issue.  (Doc. 11 at 14-22.)  More specifically, the

19  government accuses the bankruptcy court of improperly grafting a temporal element onto

20  § 551 and applying a principle of "once property of the estate, always property of the estate

21  for purposes of § 551" that is "inconsistent with the Bankruptcy Code and related case

22  law."  (*Id.*)  In a related vein, the government argues that the bankruptcy court erred in

23  relying on *Heintz*, which it characterizes as outdated and non-precedential, and suggests

24  that upholding the bankruptcy court's approach would result in a parade of horribles,

25  including allowing unsecured creditors to reach exempt assets they would otherwise be

26

27  ───────────────
   [6]  The government requested oral argument.  (Docs. 11, 14.)  This request is denied
   because the "facts and legal arguments are adequately presented in the briefs and record,
28  and the [Court's] decisional process would not be significantly aided by oral argument."
   Fed. R. Bankr. P. 8019(b)(3).

unable to reach and preventing debtors from receiving the fresh start that the bankruptcy process promises.  (*Id.*)  The Trustee responds that the bankruptcy court rightly decided the issue and that *Heintz* is on point.  (Doc. 13 at 1-6.)  The Trustee further argues that the government's arguments are, at bottom, policy arguments more appropriately directed to Congress.  (*Id.*)  The government replies that the Trustee conflates the distinct questions of "whether exempt interests in property should be deemed 'property of the estate'" and "the nature and extent of the exemption, *i.e.*, what is the specific interest that is exempted." (Doc. 14 at 3-10.)

The bankruptcy court correctly determined that the avoided tax lien was property of the estate and, therefore, could be preserved by the Trustee for the benefit of the estate under § 551.  In *Owen*, the Supreme Court confirmed that property that is exempted is nevertheless initially the property of the bankruptcy estate.  The Court stated that "[n]o property can be exempted (and thereby immunized [against liability under § 522]) . . . unless it first falls *within* the bankruptcy estate" and noted that "[s]ection 522(b) provides that the debtor may exempt certain property 'from property of the estate'; obviously, then, an interest that is not possessed by the estate cannot be exempted."  *Owen*, 500 U.S. at 308. In short, as the BAP noted in *Heintz*, "the fact that property is removed from the estate after a case is commenced, through exemption or some other means, does not change the fact that it was property of the estate as of the commencement of the case."  198 B.R. at 585. *See also In re Rains*, 428 F.3d 893, 906 (9th Cir. 2005) (acknowledging the "well settled rule that property cannot be exempted unless it is first property of the estate") (quoting *Heintz*).  Debtor thus could not have exempted any interest in the Property if the Property had not first been considered property of the estate under § 541.

The crux of the government's argument is that § 551 does not look to property's status as of the petition date because it does not contain an express "temporal requirement," whereas Congress has included express temporal requirements in other Bankruptcy Code provisions.  *See, e.g.,* 11 U.S.C. § 506(a)(2) ("[V]alue with respect to [a debtor's] personal property securing an allowed claim shall be determined . . . as of the date of the filing of

the petition . . . .").  This is, in essence, an *expressio unius* argument.  Although this argument has surface appeal, it overlooks that "[s]tatutory construction . . . is a holistic endeavor."  *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).  The *expressio unius* canon "does not apply unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it," and the "canon can be overcome by contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion" because the "background presumptions governing [the subject at issue] are a highly relevant contextual feature."  *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013) (internal quotation marks omitted).  Here, the relevant background presumptions and details suggest that Congress didn't include an express temporal requirement in § 511 because other features of bankruptcy law already dictate that the property of the bankruptcy estate is assessed at the commencement of the case—and, thus, including verbiage to that effect in § 511 would have been redundant.  As the BAP in *Heintz* noted, "property of the estate" is a defined term in the Bankruptcy Code.  198 B.R. at 585.  Although § 551 does not have a temporal restriction in it, § 541—which defines "property of the estate"—does: it includes "all legal and equitable interests of the debtor in property *as of the commencement of the bankruptcy case*."  *Id.* § 541(a)(1) (emphasis added).  "When a term used in a statute is defined by that statute or by any other relevant statutory provision, [courts] generally presume that definition applies to the statute's use of the term" unless "interpreting a term consistently with its statutory definition would . . . lead to obvious incongruities or would destroy one of the major [congressional] purposes."  *United States v. Olson*, 856 F.3d 1216, 1223 (9th Cir. 2017) (third alteration in original) (citation and internal quotation marks omitted).  The Court thus presumes that Congress intended for the term "property of the estate" in § 551 to mean what it says in § 541.

The government has not offered any persuasive reason to depart from this presumption and interpret "property of the estate" differently across the two different Code provisions.  The government argues that "several Code provisions suggest that exempt

property always belongs to the debtor, from the start, albeit conditionally" and cites § 522(b), arguing that it does "not exempt the property 'out of the estate' at some point in the future" but rather "exempt[s] property 'from property of the estate' in the first place." (Doc. 11 at 18.)   This argument fails because the Supreme Court has adopted an interpretation of this provision that forecloses the government's interpretation: "Section 522(b) provides that the debtor may exempt certain property 'from property of the estate'; obviously, then, an interest that is not possessed by the estate cannot be exempted." *Owen*, 500 U.S. at 308.

The government also cites § 522(c), which provides that "property exempted under [§ 522] is not liable during or after the case for any debt of the debtor," arguing that this language connotes that exempt property maintains its exempt status from the outset of the case, rather than after the deadline to object passes.   This argument is too clever by half, because it fails to consider that a debtor can only exempt what is rightfully hers—the legal and equitable interest she carried into bankruptcy, which extends only to her unencumbered equity in the asset and no further.   As the Supreme Court explained in *Owen*:

> [I]f a debtor holds only bare legal title to his house—if, for example, the house is subject to a purchase-money mortgage for its full value—then only that legal interest passes to the estate; the equitable interest remains with the mortgage holder.   And since the equitable interest does not pass to the estate, neither can it pass to the debtor as an exempt interest in property.   Legal title will pass, and can be the subject of an exemption; but the property will remain subject to the lien interest of the mortgage holder.

500 U.S. at 308-09 (citation omitted).   Admittedly, this portion of *Owen* rested partly on § 541(d), which is not at issue in this appeal, but *Owen*'s reasoning is nevertheless instructive in evaluating the character of the Tax Lien.   It is clear that the "paramount right to collect taxes of the federal government overrides a state statute providing for exemptions." *Leuschner v. First W. Bank & Tr. Co.*, 261 F.2d 705, 708 (9th Cir. 1958). In other words, it is well established that exemptions provided under state law are ineffective against federal tax liens. *Id.   See also United States v. Heffron*, 158 F.2d 657, 659 (9th Cir. 1947) ("Against [federal tax] liens, exemptions prescribed by State laws are

ineffective.  Bankruptcy does not invalidate such liens or prevent their enforcement.") (footnote omitted); *United States v. Howard*, 2008 WL 4471333, *8 (D. Ariz. 2008) (noting that it is "well-settled that homestead exemptions under state law are ineffective against federal tax liens" and collecting cases).  Here, the Tax Lien attached to Debtor's equity interest in the Property, which meant that, upon bankruptcy, the homestead exemption that otherwise could have served to remove Debtor's interest in the Property from the property of the estate was ineffective to allow Debtor to reclaim that portion of the interest encumbered by the Tax Lien.  Thus, even assuming without deciding that the government's interpretation of § 522(c) is correct, Debtor could not claim an exemption for the value of the Property encumbered by the Tax Lien.[7]

This conclusion finds ample support in the relevant case law.  In *Gill*, the BAP "conclude[d] that the Code expressly authorized [the] Trustee to avoid, subordinate and preserve the penalty portion of the IRS's tax lien for the benefit of the estate's unsecured creditors."  574 B.R. at 716.  Although the court did not expressly address whether the tax lien was property of the estate, the court noted that "[e]nforcement of penalties against a debtor's estate serves not to punish the delinquent taxpayers, but rather their entirely innocent creditors."  *Id.*  The government's cited cases do not hold otherwise.  In *In re Covington*, 368 B.R. 38 (Bankr. E.D. Cal. 2006), for example, the debtor owed a domestic support obligation but claimed exemptions in a $1,000 bank deposit and an automobile. *Id.* at 40.  The trustee objected to the claimed exemptions and sought to liquidate the exempt property to pay the domestic support obligation.  *Id.*  The bankruptcy court disagreed and analogized the domestic support obligation to a nondischargeable tax claim, noting that "[w]hen a debtor exempts property, it is effectively removed from the estate."  *Id.*  If,

---

[7]     The government argues that the version of Federal Rule of Bankruptcy Procedure 4003(b)(2) in effect when *Heintz* was decided, which provided that a trustee had 30 days to file an objection to a claimed exemption, means that *Heintz* "sought to solve a problem that . . . should no longer exist," because Rule 4003(b)(2) now permits a trustee to file an objection to a claimed exemption up to one year before the close of bankruptcy proceedings. (Doc. 11 at 14-15.)  This argument is unpersuasive.  The BAP did not assign any significance to Rule 4003(b)(2) in its ruling that an exemption was "property of the estate" for purposes of § 551.  At any rate, for the reasons already explained, Debtor's claimed exemption did not extend to the value of the Property encumbered by the Tax Lien.

however, the "property declared exempt by the debtor has value beyond the exemption amount, or if it appreciates beyond the exemption amount after the petition is filed, the nonexempt amount or appreciation is property of the estate that may be administered by the trustee." *Id.* at 40 n.1.  Notably, the trustee did not provide any authority "indicating that he may liquidate *otherwise exempt property* because the debtor happens to owe a nondischargeable tax claim." *Id.* at 41 (emphasis added).  Unlike the exempt property in *Covington*, Debtor's exemption here did not extend to the full value of the Property encumbered by the Tax Lien, and the *Covington* court made clear that value in the asset "beyond the exemption amount" *was* property of the estate.

Finally, the government contends that allowing trustees to avoid penalties would permit them to "step into the shoes of penalty liens against any and all exempt assets subject to federal tax liens and other special liens," such as retirement accounts.  (Doc. 11 at 20-22.)  But it is not this Court's role to decide hypothetical cases with different facts or weigh policy arguments about how statutes should be written.  The plain language of §§ 551, 541, and 522, as well as Supreme Court precedent interpreting them, compel the conclusion that any interest held by Debtor in the Property was property of the bankruptcy estate from the commencement of bankruptcy proceedings and that Debtor's interest did not extend to the value of the Property encumbered by the Tax Lien.  The bankruptcy court did not err in reaching this conclusion.

This does not end the inquiry.  In Part B of its brief, the government argues that a tax lien doesn't exist in a different position than the debtor's exemption and instead exists conterminously with the exemption.  (Doc. 11 at 22-30.)  The Trustee disagrees (Doc. 13 at 6-9), and both parties cite authorities they view as supporting their positions.  Although it is a close call, the Court agrees with the bankruptcy court that Debtor's homestead exemption was third in line behind the Tax Lien, rather than existing alongside the Tax Lien.

The government emphasizes the language of § 522(c)(2)(B), which provides that "property exempted under this section . . . is not liable during or after the case for any debt

of the debtor that arose . . . before the commencement of the case, except . . . a debt secured by a lien that is . . . a tax lien, notice of which is properly filed." The government argues that the statute's use of the words "property exempted" means that "property can be 'exempted' and remain liable for a debt secured by 'a tax lien' at the same time" and that, if "exemptions apply only after tax liens are accounted for, § 522(c)(2)(B) would have little meaning." (Doc. 11 at 24-25.) In the Court's view, this reads too far into the statute. The Court interprets this provision as merely providing that a creditor can reach exempt property after bankruptcy proceedings to satisfy its claim. *See, e.g.*, 6 Collier ¶ 724.02[5] ("Section 522(c)(2)(B) provides that properly filed tax liens continue to encumber exempt property after case closure."). One purpose of this provision is to prevent debtors from avoiding tax liens under other portions of § 522. *Id.* ("Courts are nearly uniform in holding that section 522(c)(2)(B) prevents debtors from avoiding tax penalty liens under section 522(h)."). *See also Demarah*, 62 F.3d at 1251-52. Sections 522(g) and (h) are instructive. Section 522(h) provides that a debtor may avoid a transfer "to the extent that the debtor could have exempted such property under subsection (g)(1) if the trustee had avoided [the] transfer" under certain conditions, and section 522(g) permits a debtor to exempt property that the trustee recovers "to the extent that the debtor could have exempted such property" under certain conditions. The government's interpretation of § 522(c)(2)(B) would render §§ 522(g) and (h) superfluous. "One of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up). If a tax lien exists conterminously with a debtor's exemption (*i.e.*, encumbering the exemption rather than the debtor's pre-bankruptcy equity in the asset), then §§ 522(g) and (h) would be unnecessary because any transfer avoided under § 522(h) or any property that the trustee recovered that the debtor could exempt under § 522(g) would automatically revert to the debtor as an exemption. The Court views the better interpretation of § 522(c)(2)(B) as simply preventing a debtor from escaping liability

1    for tax liens after bankruptcy.[8]

2           Other courts agree that tax liens are not conterminous with a debtor's exemptions.

3    For example, in *Gill*, the debtor claimed a $40,000 homestead exemption in a property

4    valued at $500,000.  574 B.R. at 712.  The property was subject to a $371,000 mortgage

5    and secured tax claims totaling $161,530, including over $48,000 in tax penalties.  *Id.* at

6    711-12.  The debtor sought to have the property abandoned because there was not sufficient

7    value beyond the secured claims and the debtor's exemption to distribute to unsecured

8    creditors.  *Id.* at 712.  Although the court did not directly address whether the tax lien

9    coincided with the debtor's exemption, the court did suggest that the lien occupied a

10   different sphere than the exemption.  The court noted that, because the bankruptcy court

11   found there was "substantial value" for the "estate's unsecured creditors with [the]

12   Trustee's sale of the Residence free and clear of the IRS's lien," "it implicitly determined"

13   that the Trustee could avoid the tax lien for penalties and if the "court had not determined

14   so, the[] Debtor's claimed homestead exemption would have exhausted the remaining

15   equity after paying [the mortgage holder], leaving nothing for unsecured creditors and

16   making abandonment appropriate."  *Id.* at 716.  As the Trustee points out (Doc. 13 at 7-8),

17   if it were true that tax liens attached solely to a debtor's exemption, there would have been

18   no need to avoid the tax lien or abandon the property because there would have been a

19   substantial amount of value left in the property even after satisfying the debtor's homestead

20   exemption.

21          Similarly, in *In re Bolden*, 327 B.R. 657 (Bankr. C.D. Cal. 2005), the debtor claimed

22   a $50,000 homestead exemption in a property that was valued at $925,000.  *Id.* at 659-60.

---

24   [8]      The government's cited cases support this unremarkable view.  *See, e.g.*, *In re*
25   *Ruppel*, 368 B.R. 42, 44 (Bankr. D. Or. 2007) (Section 522(c)(1) "provides that
     notwithstanding [an asset's] exempt status, exempt property *remains liable for those*
     *debts*") (emphasis added); *Covington*, 368 B.R. at 41 ("Section 522(c)(1) does not provide
26   for the disallowance of an exemption.  Rather, it provides that property exempted by the
     debtor is *nonetheless liable* for a domestic support obligation.") (emphasis added); *In re*
27   *Reed*, 127 B.R. 244, 246 (Bankr. D. Haw. 1991) ("Every court that has discussed section
     522(c)'s exception for properly filed tax liens has come to the same conclusion: a properly
28   filed tax lien attaches to the debtor's otherwise exempt property and *survives bankruptcy*.")
     (emphasis added).

1    The IRS had "eight secured tax liens against the property totaling $1,324,632.52." *Id.* at

2    659.  The debtor argued that the trustee needed to abandon the property because the sale

3    would not satisfy the liens on the property. *Id.* at 661.  The court noted that the "homestead

4    exemption does not have precedence over the tax liens" and that "[g]enerally, a debtor is

5    not entitled to claim a homestead exemption on property that is subject to an IRS levy."

6    *Id.* at 662-63.  "In other words, § 522(c)(2) neutralize[d] [the debtor's] claim that he is

7    entitled to collect on his homestead exemption claim here [even though there was] no

8    timely objection" to his exemption claim. *Id.*  The court then concluded that the trustee

9    could avoid the tax penalty liens and preserve them for the benefit of the estate under § 551,

10   notwithstanding the debtor's claimed homestead exemption. *Id.* at 663-64.  These cases

11   suggest that secured tax liens occupy a different place in line than the debtor's claimed

12   exemption, and the value of the debtor's exemption is determined by how much value the

13   debtor has in the asset unencumbered by other liens.

14          The government's cited cases do not compel a different result.  In *In re Bird*, 577

15   B.R. 365 (10th Cir. BAP 2017), the Tenth Circuit BAP held that debtors could "claim valid

16   homestead exemptions, notwithstanding a lack of equity in the Homesteads." *Id.* at 383.

17   However, as the Trustee points out, the BAP's decision was decided based on Utah law,

18   and the government has not argued that the result would be the same in this circuit or under

19   Arizona law.  And in *In re Selander*, 592 B.R. 729 (Bankr. W.D. Wash. 2018), a debtor

20   claimed a $125,000 homestead exemption in a property that was subject to a judgment lien

21   and tax liens and was sold for $825,000. *Id.* at 730-32.  The parties entered into an

22   agreement that the sale of the property would be "strictly conditioned" upon the debtor

23   receiving the full $125,000 for his homestead exemption. *Id.* at 731.  The IRS objected to

24   the sale because paying the homestead exemption would "ignore[] the existence of tax liens

25   that [it] assert[ed] would take priority over [the homestead] exemption." *Id.*  The trustee

26   and the IRS ultimately "resolved the objection with a stipulation authorizing the sale of the

27   Residence but reserving the issue of whether the Debtor or the IRS was entitled to the

28   $125,000 in sale proceeds allocated for the Homestead Exemption." *Id.*  After the sale, the

trustee filed a motion "requesting that the Court authorize distribution of the Homestead Exemption to the IRS, pursuant to its Notice of Federal Tax Lien against the property, but only after significant reductions for the costs of sale and administrative expenses." *Id.* at 732. Accordingly, the question before the bankruptcy court was whether the trustee could "use the tax lien subordination provisions of § 724(b) to pay administrative expenses associated with the sale of real property from a debtor's allowed exemption in homestead proceeds still subject to the tax lien." *Id.* The IRS argued that the "subordination provision of § 724(b) [did] not apply . . . because of the exempt nature of the $125,000 in proceeds subject to the tax lien." *Id.* The trustee, on the other hand, argued that "the superior interest of the IRS in the Homestead Exemption funds allow[ed] him to use the subordination provisions of § 724(b) notwithstanding the claimed exemption." *Id.*

The government here makes much of the fact (Doc. 11 at 26) that the bankruptcy court said that "in certain circumstances a tax lien may in fact exist on property that is not otherwise subject to the interests of creditors." *Id.* at 734. But the question facing the *Selander* court was markedly different than the question facing this Court—in *Selander*, the "situation . . . [was] that of an IRS lien relying on a debtor's homestead exemption *for its very existence*," but no similar situation is present here. *Id.* (emphasis added). Also different is that the parties *agreed* that the debtor would receive the full $125,000 homestead exemption, so it is logical that the IRS would argue and the bankruptcy court would hold that the tax lien attached to the debtor's exemption and would survive bankruptcy under § 522(c)(2)(B). *Id.* at 735 ("Debtor's Homestead Exemption removed the value of $125,000 from the estate but such exemption was powerless to eliminate the interest of the IRS in those funds claimed with the exemption."). Another "[u]nique" feature of *Selander*, not present here, was "the fact that Debtor's Homestead Exemption [was] superior to [the judgment] lien but not the statutory tax lien." *Id.* at 733. But here, as explained above, Debtor's claimed exemption in the Property falls in line after the Tax Lien—the Tax Lien attached to Debtor's pre-bankruptcy equity in the Property. The bankruptcy court did not err in holding that the Tax Lien occupied a higher priority than

1  Debtor's homestead exemption.

2  II.  Whether The Avoided Lien Is Preserved For The Benefit Of The Estate

3        Because the Trustee could avoid the Tax Lien under § 724(a), the next question is

4  whether the Trustee could preserve the avoided Tax Lien for the benefit of the estate (as

5  opposed to the Debtor recovering the value of the avoided lien under § 522(g)).  The

6  government argues that the bankruptcy court erred in holding that Debtor could not recover

7  the avoided tax lien under § 522(g) because the "test under § 522(g) is whether . . . the

8  Debtor could have exempted the property had there never been a tax lien—and there is no

9  doubt she could."  (Doc. 11 at 31-38.)  The Trustee argues that the government has no

10  standing to argue that Debtor could recover the avoided tax lien and that the Ninth Circuit's

11  decision in *DeMarah* forecloses Debtor's ability to do so.  (Doc. 13 at 9-11.)

12        Unless Debtor is able to recover the avoided lien under § 522(g), the self-executing

13  nature of § 551 means that the avoided lien is automatically preserved for the benefit of the

14  estate.  *See, e.g.*, *In re Trout*, 609 F.3d 1106, 1108 (10th Cir. 2010) (calling § 551 an

15  "automatic preservation of avoided transfer for benefit of the estate"); *In re Van de Kamp's*

16  *Dutch Bakeries*, 908 F.2d 517, 519 (9th Cir. 1990) ("[T]he legislative history stresses the

17  automatic nature of preservation under section 551."); *In re Kavolchyck*, 164 B.R. 1018,

18  1023-24 (S.D. Fla. 1994) ("[P]reservation under § 551 is an automatic consequence of

19  avoidance of a lien . . . .").  "The rights and ability of a debtor to avoid liens on property

20  claimed as exempt or to claim the benefits of liens avoided by the trustee on exempt

21  property are governed exclusively by [§ 522].  Once the lien has been avoided by the

22  trustee, the debtor must come within one of subsections [in § 522] in order to avoid the

23  operation of [§ 551]."  *In re Dipalma*, 24 B.R. 385, 387 (Bankr. D. Mass. 1982).  *See also*

24  5 Collier on Bankruptcy ¶ 551.02[2] (16th ed. 2012) ("[T]he preservation of an avoided

25  transfer for the benefit of the estate under section 551 is subject to any preservation for the

26  benefit of an individual debtor regarding exempt property under section 522(g) and (i)(2).

27  This, however, does not allow a debtor to exempt property subject to the trustee's preserved

28  lien position, unless such preserved lien was otherwise avoidable under section 522.").

1      Although the government's argument has some force, and the outcome might be

2   different if the Court were writing on a blank slate, *DeMarah* compels the result that Debtor

3   cannot recover the avoided Tax Lien under § 522(g).   In *Demarah*, the debtor "failed to

4   pay various federal income taxes, employment taxes, and the interest and penalties

5   associated with them," so the IRS filed a tax lien "against all of DeMarah's property."  62

6   F.3d at 1249.  The debtor then filed for bankruptcy and declared all of his property exempt

7   under § 522.  *Id.*  On appeal, the issue was whether the debtor could avoid the tax lien

8   under § 522(h).  *Id.* at 1250-51.[9]  The parties didn't dispute that DeMarah met most of the

9   requirements of § 522(h): "[h]e did not attempt to conceal any property and the trustee did

10  not attempt to set aside the tax liens," nor was the "attachment of a tax lien a voluntary

11  transfer of property."  *Id.*   The court also agreed that "§ 522(h) would normally allow

12  DeMarah to avoid a lien that secures a claim for noncompensatory penalties."  *Id.* at 1251.

13  The question was therefore whether the "transferred property [was of a kind that the debtor

14  would have been able to exempt from the estate if the trustee (as opposed to the debtor)

15  had avoided the transfer."  *Id.* at 1250.  The debtor argued that, because he "would have

16  been able to exempt his property from the estate if the trustee had recovered the transfer

17  . . . the last condition [was] met."  *Id.* at 1251.  The Ninth Circuit disagreed.  Although the

18  court acknowledged that the debtor's "argument would be powerful, even conclusive, if

19  § 522(h) existed in a vacuum," the court emphasized that a different statutory provision,

20  § 522(c), limited a debtor's ability to avoid a tax lien.  *Id.*  Thus, the "fact that DeMarah

21  may [have] been able to exempt the property that is subject to the tax lien from the

22  bankruptcy estate does not mean that he [could] remove the lien itself, or that portion of it

23  which secure[d] the penalty."  *Id.*  The "explicit language" of § 522(c)(2)(B) "belie[d] any

24

25  ⁹      Section 522(h) provides, in relevant part: "The debtor may avoid a transfer of
    property of the debtor . . . to the extent that the debtor could have exempted such property
26  under subsection (g)(1) of this section if the trustee avoided such transfer" and if the trustee
    could have avoided the transfer but did not attempt to do so.  Section 522(g) in turn provides
27  that "[n]otwithstanding sections 550 and 551 . . . the debtor may exempt . . . property that
    the trustee recovers under section . . . 551 . . . to the extent that the debtor could have
28  exempted such property under subsection (b) . . . if such property had not been transferred"
    and if the transfer was involuntary and the debtor did not "conceal such property."

argument that the debtor [could] escape a part of the tax lien." *Id.* at 1252. The court additionally noted that "Congress could logically have wanted to allow tax penalties to be avoided if that would benefit unsecured creditors" while "at the same time . . . eschew[ing] benefiting debtors who had incurred those penalties by failing to pay their taxes." *Id.* "Congress created avoidances of noncompensatory penalties to protect unsecured creditors from the debtor's wrongdoing," but "if DeMarah were allowed to avoid the penalties creditors would not be protected; instead, DeMarah would gain the benefit of avoiding the penalties he incurred by not paying income and employment taxes." *Id.*

Although *DeMarah* addressed § 522(h) and not § 522(g), which is relevant here, its holding is nevertheless instructive given that one of the requirements a debtor must meet to avoid a transfer under § 522(h) is that the debtor could have exempted the property under § 522(g)(1). In other words, the Ninth Circuit necessarily ruled that the debtor would have been unable to exempt the property from the estate under § 522(g). Accordingly, *DeMarah* compels the conclusion that Debtor may not exempt the Property under § 522(g). *See also* 6 Collier ¶ 724.02[4] ("The scope of section 724(a) is limited to property of the estate. . . . For instance, if a lien for a penalty . . . has attached to property that is exempt and not part of the debtor's chapter 7 estate, section 724 cannot be used by the debtor to avoid the lien."); *id.* ¶ 724.02[5] ("Courts are nearly uniform in holding that section 522(c)(2)(B) prevents debtors from avoiding tax penalty liens under section 522(h).").

Accordingly,

**IT IS ORDERED** that the grant of summary judgment to the Trustee is **affirmed**. The Clerk of Court is directed to enter judgment accordingly and to close this case.

Dated this 16th day of April, 2021.

Dominic W. Lanza
United States District Judge